### J. A. PRITCHARD ET AL. v. D. E. WILLIAMS.

(Filed 10 April, 1918.)

1. **Trusts, Parol—Registration—Purchasers with Notice—Statutes.**

Our registration laws as to notice has no application to a parol trust engrafted on a conveyance of land where those claiming its benefits are found by the verdict of the jury, interpreted in the light of the charge, not to have been purchasers for value.

2. **Trusts, Parol—Remaindermen—Right of Action—Equity.**

Beneficiaries having vested or contingent interests in remainder under a parol trust engrafted upon a conveyance of lands, may maintain a suit to have such interest declared and established in the lifetime of the first taker, in the nature of a bill in equity to perpetuate testimony with the additional element of declaring the trusts, but no decree or order may be entered to disturb the possession of those entitled to it.

3. **Same—Election—Conflicting Rights—Limitation of Actions.**

The right of the holder of an interest under a parol trust in remainder to maintain his suit to have the trust declared in the lifetime of the first taker, is not inconsistent with his right to have the trust declared and for possession after the particular estate has fallen in, for the one includes the other; and his failure to have exercised the one does not bar his cause of action as to the other.

**4. Same—Adverse Possession.**

· Where under the terms of a parol trust engrafted upon a deed the grantee should hold the legal title to the use of his wife for her life, then to himself; then to H. for life with remainder over to the plaintiffs, etc., who bring their suit to declare the trust and for possession soon after the death of H., and it appears that the defendants claim under *mesne* conveyances from the trustee, but are not purchasers for value; defendants do not hold adversely to plaintiff during the continuance of the particular estates, and the suit is not barred by lapse of time.

**5. Trusts, Parol—Deed of Trustee—Title—Original Uses.**

Where a trustee under a parol trust engrafted on his title holds to the use of his wife for her life and then affected by certain contingent uses, conveys the lands to his wife absolutely, his deed is a renunciation of the trust and his relation is adversary, but his wife, taking the title with notice, holds it subject to the trusts originally declared.

**6. Appeal and Error—Evidence—Harmless Error.**

The exclusion of evidence on the trial will not be considered reversible error on appeal where it appears that the witness had substantially given such evidence elsewhere in his testimony, and that it conformed with the contention of the appellee.

. HOKE, J., concurring; CLARK, C. J., dissenting.

APPEAL by defendant from *Kerr, J.,* at the Fall Term, 1917, of CAMDEN.

This is an action instituted by the plaintiffs, the children of D. T. Pritchard and grandnephew and nieces of D. L. Pritchard, to establish a parol trust and to recover possession of land.

The defendant relies on the plea of the statute of limitations and laches.

D. L. Pritchard was formerly the owner of the land described in the complaint, and on 2 January, 1886, he executed a deed therefor to J. G. Hughes, and it is at this time and in connection with the execution of this deed it is alleged the parol trust was declared.

On 14 March, 1888, after the levy of an execution against said Hughes and the allotment of his homestead, the part of the land in excess of the homestead, 80 acres, was sold and a deed therefor made to the purchaser, James H. Sawyer.

After the death of Sawyer, this part of the land was, on 11 September, 1899, sold for partition among the heirs of Sawyer, and a deed therefor executed to L. P. Williams.

On 15 January, 1900, Williams conveyed this land to John S. McCoy; on 7 January, 1907, McCoy conveyed to W. Lynch, and on 14 January, 1911, Lynch conveyed this part of the land to the defendant.

On 14 January, 1894, Hughes conveyed the land covered by the homestead, 160 acres, to his wife by deed purporting to convey in fee, which

was registered in 1902, and on 3 May, 1907, Mrs. Hughes and her daughter Elizabeth conveyed the same land to the defendant.

Mrs. Hughes died in 1913; Elizabeth Hughes in May, 1915, and this action was commenced in October, 1916.

There was a motion for judgment of nonsuit upon the ground that the action was barred by the statute of limitations upon the admitted facts. This motion was overruled and the defendant excepted.

His Honor instructed the jury if they believed the evidence to answer the issue as to the statute of limitations in favor of the plaintiffs, and the defendant excepted. The jury returned the following verdict:

1. Did Joseph G. Hughes hold the property sued for in trust to convey the same as alleged in the complaint? Answer: "Yes."

2. Did the defendant or any of those under whom he claims purchase the 160-acre tract for value and without notice of said trust? Answer: "No."

3. Did the defendant, or any of those under whom he claims, purchase the 80-acre tract for value and without notice of said trust? Answer: "No."

4. What has been the rental value since 1915? Answer: "$500."

5. Is plaintiff's cause of action barred by the statute of limitations? Answer: "No."

Judgment was entered in favor of the plaintiffs, and the defendant appealed.

*D. H. Tillett and Meekins & McMullan for plaintiffs.*

*R. C. Dozier, Aydlett & Simpson, and Ehringhaus & Small for defendant.*

ALLEN, J. The trust established by the verdict is that J. G. Hughes, the grantee in the deed of 1886, should hold the title in trust to convey the same to the wife of Joseph G. Hughes for life, and then to himself for life if he survived her, and then to Mary Elizabeth Hughes for life, with a remainder over in two-thirds of said lands to her children if any surviving her should live to be 21 years of age, and in one-third to the plaintiffs; and if she, said Mary Elizabeth Hughes, should die without children her surviving who should live to be 21 years of age, then to convey the whole of said lands after the death of said Mary Elizabeth Hughes to the children of said D. T. Pritchard, the plaintiffs in this action, share and share alike, in fee simple.

The verdict, when considered in connection with the charge, also establishes that neither the defendant nor any one under whom he claims is a purchaser for value, so that the question discussed, but not decided, in *Wood v. Tinsley,* 138 N. C., 509, and *Lynch v. Johnson,* 171

N. C., 632, as to the effect of the Connor Act on parol trusts is not presented, and the learned counsel for defendant do not so contend in the oral argument or by brief.

The plaintiffs as remaindermen, vested as to one-third and contingent as to two-thirds interest, could have maintained an action to have the trust declared during the existence of the life interest, as without this right it would have been in the power of the trustee to defeat the trust, resting in parol, by a conveyance to an innocent purchaser for value. "Where, however, a party has an interest, it is perfectly immaterial how minute the interest may be, or how distant the possibility of the possession of that minute interest, if it is a present interest. A present interest, the enjoyment of which may depend upon the most remote and improbable contingency, is nevertheless a present estate; and, as in the case upon *Lord Berkley's Will,* though the interest may, with reference to the chance, be worth nothing, yet it is in contemplation of law an estate and interest, upon which a bill may be supported." Danll., Ch. Pr., Vol. 1, 317.

"A remainderman is entitled to equitable relief whenever necessary to protect his interest against loss or injury." 16 Cyc., 658. See to same effect, Story Eq. Pl., sec. 301; *Allan v. Allan,* 6 Ves., 135; *Latham v. L. Co.,* 139 N. C., 211.

This right is in the nature of a bill in equity to perpetuate testimony, with the additional element of declaring the trusts, which is no more than the jurisdiction in equity to enter a decree preserving the property when it is in danger of loss and where, but for such decree, the rights of interested parties might be destroyed.

In such proceeding by the remaindermen, the land itself, with the right of control and possession, is not before the Court. The *res* is the establishment of the respective interests in the title, and no order or decree can be entered disturbing the possession of those entitled to interests for life, and it cannot therefore be the equivalent of, nor coextensive with, an action to declare the trust and to recover possession of the land.

If this right did not exist in the remaindermen, lapse of time cannot affect the present action for possession, which could not be maintained until the death of the life tenant in 1915, and if it did exist it came into being at the same time and by the same act with the right now attempted to be exercised, to establish the trust and to recover possession. The two rights are not only not inconsistent, but one includes the other, and it is only when two rights are inconsistent that the party is put to his election, and that the exercise of one or the failure to do so bars the other.

In *Machine Co. v. Owings,* 140 N. C., 505, *Justice Hoke* quotes the approved doctrine as follows: "In Enc. Pl. and Prac, Vol. 7, 362, the doctrine is stated as follows: 'As already stated, the principle does not apply to all coexistent remedies. As regards what have been termed consistent remedies, the suitor may, without let or hindrance from any rule of law, use one or all in a given case. He may select and adopt one as better adapted than the others to work out his purpose, but his choice is not compulsory or final, and if not satisfied with the result of that he may commence and carry through the prosecution of another. Thus, where a sale of chattels is induced by the fraud of the vendee, the vendor may prosecute the vendee for the price of the articles in one action and in another for damages on account of the fraud, both proceeding on the theory of ratifying the sale; but he cannot maintain either if he has rescinded the sale or if, on the theory of rescission, he has resorted to replevin to recover the property. No suitor is allowed to invoke the aid of the courts upon contradictory principles of redress upon one and the same line of facts.' In 3 Words and Phrases Judicially Defined, p. 2338, it is said: 'The whole doctrine of election is based on the theory that there are inconsistent rights or remedies of which a party may avail himself, and a choice of one is held to be an election not to pursue the other. The principle does not apply to coexisting and consistent remedies.' These statements of doctrine are supported by well-considered decisions and are very generally accepted as correct. *Whittier v. Collins,* 15 R. I., 90; *Bacon v. Moody,* 117 G., 207; *Austen v. Decker,* 109 Iowa, 109; *Black v. Miller,* 75 Mich., 323." The principles has been applied in a number of cases to protect the remaindermen against the plea of time and laches.

In *Stewart v. Conrad,* 100 Va., 135, there was a misappropriation of a fund held in trust for life and then in remainder, and the Court said as to the right of action: "The remaindermen, under the terms of the will creating the trust fund, are not entitled to the possession of any part of it until the death of the life tenant, who was a party to this suit, and who, so far as this record shows, is still living. Until her death the appellants would have no standing in court except to ask a court of equity to prevent or remedy a violation of the trust and to preserve the trust fund. They had the right to invoke the aid of a court for those purposes, but they were under no legal obligation to do so, and the objection of laches or acquiescence will not lie for their failure to assert the rights which have not yet accrued."

In *Watson v. Thompson,* 12 R. I., 472, it is held that although a remainderman might maintain an action to have a resulting trust declared during the existence of a life estate, that his failure to do so would not be accounted to him as laches and cause a forfeiture of his right of action on the termination of the life estate.

In *Aiken v. Suttle,* 72 Tenn., 109, defendants claimed under deeds purporting to convey a fee, and relied on the statute of limitations. The Court held the plaintiff not barred as she was a remainderman, and said: "The statute of limitations could not run against her until after the termination of the particular estate by the death of C. K. Gillespie. *Miller v. Miller,* Meigs, 484; *McCorry v. King's Heirs,* 3 Hum., 267. She was not bound to sue until her right to possession should have accrued. Nevertheless, at any time prior thereto she might sue to have a cloud removed from her remainder interest and to have her rights declared. A remainderman is not obliged to wait until the right of possession has accrued, but may have a cloud removed during the existence of the particular estate."

In *Gibson v. Joyner,* 37 Miss., 167, it was held that the statute of limitations did not begin to run against remaindermen until termination of life estate, although he might have maintained an action before that time to prevent loss of the property. The case of *Wooten v. R. R.,* 128 N. C., 119, and *Baker v. R. R.,* 173 N. C., 365, also have a direct bearing on the question involved here.

In the first of these cases stock was bequeathed to Charles Bradley in 1854 to hold for Lucy Jewett for life, and upon her death for her surviving children. The stock appeared on the books of the company in the name of Bradley, trustee for Lucy Jewett. In 1869, Bradley, trustee, transferred the stock to Lucy Jewett absolutely and new stock was issued, which in the same year was sold by her to various persons. Lucy Jewett died in 1898, twenty-nine years after the sale, and the children commenced their action the following year. It was held that the action was not barred by the statute of limitations, and the Court, among other things, said: "The defendant further sets up the statute of limitations against the demand of the plaintiffs. We are not deciding that the plaintiffs had no right to interfere in the transfer of the stock to have it restored to its proper ownership at any time after the wrongful transfer, but they were not compelled to take action for the recovery of the stock or its value until after the death of their mother, which occurred in 1898. This action was commenced in 1899, and is not therefore barred by the statute of limitations."

In the *Baker case* the facts are similar, except the interest in remaindermen was contingent and forty-seven years elapsed after the breach of trust before the death of the life tenant, and it approves the *Wooten case.*

Again, neither the defendant nor any one under whom he claims has held adversely to the plaintiffs during the existence of the life interests, as none of them are purchasers for value and all took with notice of the equity of the plaintiffs.

It is true the execution of a deed by the trustee to his wife purporting to convey the fee was a renunciation of the trust by him (*Coxe v. Carson,* 169 N. C., 132), and thereafter his relation to the plaintiff was adversary, but by the same act he parted with the title and with the power to protect the interests of the plaintiffs, and he conveyed the land to his wife, for whom he held the title in trust for life, who took the conveyance with notice.

This deed operated to convey to the wife her interest for life, and as she had notice of the plaintiffs' equity she held the fee in remainder in trust for the plaintiffs, and the same rule prevails as to the conveyance to the defendant. *McMillan v. Baker,* 85 N. C., 291; *Griffin v. Thomas,* 128 N. C., 312.

In the *Baker case,* Ronald McMillan, trustee, was directed by a court of equity to invest certain money in land to be held in trust for his wife for life, and then for her children, and in 1855, in violation of the trust, he made the investment and took the title in trust for his wife in fee. The trustee died in 1860 and the wife in 1878, and the action was commenced the following year by the children against the defendant, who bought under an execution sale against the wife in 1869. It was held that the deed in favor of the wife, although in form a fee, conveyed the life estate, and that there was no adverse holding against the plaintiffs by the wife or the defendant until the death of the wife.

We are, therefore, of opinion the plaintiffs' cause of action is not barred by the lapse of time.

We have considered the other exceptions of the defendant and find no reversible error.

The exception principally relied on is to the refusal of his Honor to permit the defendant to prove, for the purpose of impeachment, by the cross-examination of D. T. Pritchard, who was the principal witness to establish the trust, that he qualified as executor of D. L. Pritchard, and that he made no return of the land in controversy, although the debts of the estate exceeded the assets.

The first answer to the position of the defendant is that the facts sought to be elicited from the witness substantially appeared in evidence.

The witness testified that he qualified as executor, and the fact that the title remained in Hughes and his grantee until the commencement of this action shows that he never proceeded against the land in controversy as the property of D. L. Pritchard. He also testified that he administered the whole estate of his uncle; that the whole estate was sold and his indebtedness paid as far as it went; that the only man he owed was Mr. Hinton, and he owed him $9,000, which clearly implies that the assets were not sufficient to pay the debts.

Again, his failure to make return of the property is consistent with his testimony that it was conveyed to Hughes in trust, and if not, the bias and feeling of the witness towards the cause and parties was made to appear clearly by his further cross-examination.

No error.

HOKE, J., concurring: If section 980 of our Registration Laws, commonly known as the Connor Act, applies to parol trusts, invalidating them as to subsequent purchasers holding deeds duly registered, the issues are not fully determinative of the controversy, and the cause should be remanded for further findings. Owing to the way the second and third issues are framed, "Is defendant, or any of those under whom he claims, a purchaser for value and without notice of the trust?" the response "No" may very well signify, and be made on the ground, that defendant is a purchaser for value, but with notice. There is evidence to support such a finding, and it has been repeatedly held that when the Connor Act applies, no notice however formal will affect the holder under a deed first registered on the theory that the act controls the rights of the parties. The answer, therefore, is not necessarily conclusive.

I am of opinion, however, that the act in question does not apply to parol trusts and in no way affects them or the rules by which they are established and enforced. Drawn with intelligent care and foresight by our former *Associate Justice Connor,* now an honored member of the Federal bench, it was professedly designed and intended to affect priorities arising from registrations, and from its very nature and purpose, therefore, is restricted to written instruments capable of registration, and the act, in terms, applies only to "conveyances of land, contracts to convey, and leases of land for more than three years"—all required to be in writing by other sections of the same statute. I conclude, therefore, that these trusts, resting in parol and fully recognized by our law (*Jones v. Jones,* 164 N. C., 320; *Gaylord v. Gaylord,* 150 N. C., 222; *Avery v. Stewart,* 136 N. C., 436; *Shelton v. Shelton,* 58 N. C., 292; *Strong v. Glasgow,* 6 N. C., 289), are not within the meaning, terms, or purpose of the Connor Act, and will be enforced against the holder of the legal title unless it appears that such holder or some one under whom he claims has acquired such title for a fair and reasonable value and without notice of the trust. They were no doubt omitted from the Connor Act for the reason that, being recognized estates oftentimes of the greatest merit and incapable of registration because not in writing, it was considered unfair and subversive of right to destroy them in favor of one who had acquired his title with full notice of their existence.

This then being the correct position and the verdict on the first issue having established the existence of the trust estate, the findings on the

second and third issues, if they do not necessarily negative both of the requirements for the protection of defendant's title, assuredly determine that one of the essentials is lacking; either that no adequate value was paid or, which is more probable, that the defendant and all under whom he claimed the property had full notice of the trust estate and of the facts and circumstances by which it was created and, concurring in the view that, on the facts of this record, the statute of limitations does not operate in defendant's favor, I am of opinion that the decree upholding the trust should be affirmed.

CLARK, C. J., dissenting: Probably there is no constructive legislation of recent years that is more important and the maintenance of which in its integrity is more necessary to the landowners of North Carolina, whether buyers or sellers, than the Connor Act of 1885, ch. 147, now Revisal, 980. Prior to the passage of that act it was almost impossible for a lawyer to advise an intending purchaser of land, or for him to feel sure that he was not buying a lawsuit. An examination of the records would only show the conveyances that were recorded and at any time a prior unregistered conveyance might turn up and oral evidence might satisfy the jury that the purchaser or some of those under whom he claimed, had taken a conveyance with notice of the unregistered title. Besides the disabilities of those under whom the plaintiff claimed by reason of nonage, or marriage, or otherwise, might accumulate and thus a lapse of 80 years has been known to prevent the protection even of possession under color of title.

Under these circumstances it was absolutely necessary that those buying land, especially those coming from other states, should have the protection of a statute in favor of the purchaser against "actual or constructive notice" of an "unregistered" deed or "contract to convey."

It has been often held under this statute, "No notice to the purchaser, however full and formal, will supply the place of registration. All secret trusts, latent liens, and hidden incumbrances are and were intended to be cut up by the roots by force of our registration laws," citing *Blevins v. Barker,* 75 N. C., 438, under the similar statute in regard to the registration of mortgages, on which basis the registration of deeds and contracts to convey was placed. That case has been cited many times since (see Anno. Ed.) as applicable to all conveyances or "contracts to convey" since the Connor Act. *Lynch v. Johnson* and cases cited, 171 N. C., 615-616.

Under the Connor Act, if A registers first a conveyance from B he takes a complete title to B's interest, however formal and full a notice he may have of a former unregistered conveyance, or of any "secret trust, latent liens, or hidden encumbrances." It would be strange indeed if by

the terms of the act the purchaser was protected only from an unregistered deed of which he has notice and which it will be dangerous to forge, but would have no security against proof of some unregistered oral agreement that was unknown to him. The latter is necessarily "unregistered," which is the evil to be eliminated. It was not exempted from the statute because "unwritten" as well as "unregistered."

In this case, the plaintiffs, the children of D. T. Pritchard who were nephews and grand nieces of D. L. Pritchard, seek to impress a parol trust upon the land described in the complaint in the hands of the defendant after the lapse of 30 years. On 2 January, 1886, more than 30 years before 14 October, 1916, the date of the summons in this action, D. L. Pritchard made a fee simple deed for the premises to his son in law J. G. Hughes, which was witnessed by James A. Spencer, and in March, 1886, D. L. Pritchard died. On 14 March, 1888, after levy of execution and allotment of a homestead in part of said land (one of the commissioners to allot being James A. Spencer, witness to the aforesaid deed), the excess was sold by Wright, the sheriff, and bought by James H. Sawyer. After the death of Sawyer the land owned by him was sold by commissioners in partition 11 September, 1899, and conveyed to L. P. Williams. On 15 January, 1900, Williams conveyed to McCoy; 7 January, 1907, McCoy conveyed to Lynch; 14 March, 1911, Lynch conveyed to the defendant.

On 14 March, 1894, Hughes conveyed the other part of the land covered by the homestead to his wife, who on 3 May, 1907, conveyed to the defendant and her daughter joined in the conveyance.

Each of the above conveyances purported to convey a fee simple and each of the successive grantees possessed the land, claiming absolute ownership. There is evidence that the defendant, since the date of his deed, has been in possession, cultivating the premises, and has enhanced its value by $5,000 in cash spent on buildings and other improvements.

The plaintiffs seek to prove the trust solely by the evidence of D. T. Pritchard, father of the plaintiffs, who alleges that at the time of its creation there was present besides the grantor himself Hughes, the grantee, Mrs. Hughes, and the witness Spencer. No action was brought to set up this trust until more than 30 years after the death of the grantor, 15 years after the death of the grantee, many years after the death of the witness Spencer, and more than two years after the death of Mrs. Hughes. Before the beginning of this action, Sheriff Wright and the grantees Sawyer and McCoy had died, Williams had moved to Virginia, and Lynch, the only grantee in the chain of conveyances living and present, denied any knowledge of the alleged trust and testified on the contrary that before he purchased D. T. Pritchard himself expressly advised him to buy, and D. T. Pritchard did not deny this statement on the stand.

Thus the plaintiffs, the most of them at all times *sui juris,* neglected to sue until every witness by whom the defendant could deny the trust had died and every successive grantee by whom he could negative notice had either died or moved out of the State, except Lynch only, and he was present and denied the trust on the witness stand.

Furthermore, when the defendant bought the land, D. T. Pritchard, the sole witness for the plaintiffs, and their father, received a part of the purchase price in satisfaction of his judgment, for when the homestead was laid off and the excess was sold by Wright as sheriff and purchased by Sawyer, under whom the defendant claims, this was done at the instance of D. T. Pritchard, individually and also as executor of D. L. Pritchard as judgment creditors in the action against Hughes.

Without now discussing the many well-grounded exceptions taken on the trial that the statute of limitations is a bar to the plaintiffs' action, *Lynch v. Johnson,* 171 N. C., 615, and especially that suing in equity they are barred by such laches independent of any statute, it would seem that the Connor Act is a full protection against such "secret trust and latent lien."

It is true that the Connor Act does not apply except in favor of purchasers for value and creditors, but there is no clear and unambiguous finding in this record that the defendant was not a purchaser for value, nor is there such unambiguous finding that he had notice of said trust, and no evidence justifying such finding.

The issues submitted are: "Did the defendant or any of those under whom he claimed, purchase the 160-acre tract of land for value and without notice of said trust?" And there is the same issue as to the 80-acre tract. To both issues the jury answered "No," which is a finding, construed in the light of the evidence, that the defendant and some or all of those under whom he claimed, purchased for value but with notice of said trust. The two negatives make an affirmative. The form used, "purchase for value and without notice" of said trust, with the negative response, may well mean equally that the defendant was a purchaser for value, but with notice, or took the property not as a purchaser but without notice.

The person intended to be protected by the Connor statute was the purchaser or creditor who had full notice of the prior conveyance or trust. These findings do not determine that the defendant and all those under whom he claims were or were not purchasers for value, but merely settles that if such purchasers, they did not take without notice of said trust; whereas if they were purchasers, though with notice of said trust, they were protected from the plaintiffs' claim by the terms of the Connor Act.

It is true it is claimed by the plaintiffs that the instructions were so complete that, though the jury made this ambiguous response, it is cured by the instructions given. But who knows what passed unseen in the minds of the jury? The construction that the verdict finds that the defendant is a purchaser for value, but with notice, is in accordance with the evidence and does not conflict with the charge of the judge.

When a "secret trust" is thus attempted to be set up after the lapse of thirty years by only one witness, D. T. Pritchard, who is the father of the plaintiffs, and who is shown to have received a profit by the sale of the property as belonging to the grantee's estate, and who did not deny the statement on oath of a witness who testified that D. T. Pritchard had told him that the title was good, and in view of the numerous exceptions of law and the laches of the plaintiffs, who are proceeding in equity, it is surely proper to require that the findings upon which a court shall proceed to oust the defendant shall be clear and unambiguous whether he and none of those under whom he claims was a purchaser, and also a separate and distinct finding whether he and all those under whom he claimed acquired the property with notice of the trust.

The oral agreement attempted to be set up by plaintiffs after the lapse of more than 30 years was that Hughes agreed orally that "after the death of D. L. Pritchard he would execute a deed in fee simple conveying said land to his wife for life, with the remainder to himself for life if he survived her, then with remainder over in two-thirds of said land to her children and remainder in one-third to the plaintiffs on certain contingencies." This is a "contract to convey" which comes within the very letter of the Connor Act, Revisal, 980, and is therefore invalid as against the defendant both because unwritten and because unregistered if it had been written. *Lynch v. Johnson,* 171, bottom of page 616, discusses and decided this very point. The plaintiffs can be in no better condition because it was not in writing. If in writing, it would be invalid because not registered. The court should therefore have entered a nonsuit against the plaintiffs. At best, for the plaintiff it is an implied or constructive trust arising by operation of law from the acquisition by the defendant of trust property with notice and without adequate consideration. *University v. Bank,* 96 N. C., 287; Bispham Eq., secs. 20, 93, 95; 3 Pomeroy Eq., secs. 1048, 1006, and notes; Hill on Trustees, 172; *Robinson v. Pierce,* 45 L. R. A., 56; *Starr v. Starr,* 6 Wallace, 419.

The statute of limitations runs whether this trust is express or implied, for the possession of a trustee is presumed to be that of the *cestui que trust. Mitchell v. Freeman,* 161 N. C., 322. Though ordinarily the statute does not run against an express trust until the demand has been made, there is an exception when there has been an open disavowal

of it to the actual or constructive knowledge of the *cestui que trust.*
*University v. Bank,* 96 N. C., 287; *Dunn v. Dunn,* 137 N. C., 533. The
most open and notorious disavowal is the making and registration of a
deed. 28 A. & E., 1134; 19 A. & E., 187; 17 R. C. L., title "Limita-
tions," par. 162, note 14; *Coxe v. Carson,* 169 N. C., 132, in which last
case *Walker, J.,* carefully discusses the whole matter.

In this case, even if the trust had been express, this action has long
since been tolled by reason of the open repudiation by the successive
deeds made and registered, beginning with the deed for the excess by
Wright, the sheriff, and deed for the homestead to Hughes. Indeed, the
alleged trustee died more than fifteen years before this suit was insti-
tuted, as in *Dunn v. Dunn,* 137 N. C., 533, and *Baker v. McAden,* 118
N. C., 744, which converted it into an implied trust and started the run-
ning of the statute. As to an implied trust, "No demand is necessary,
but the statute is put in motion as soon as the property is taken into
possession." *Robertson v. Dunn,* 87 N. C., 195.

It is well settled that the rule that the statute of limitations does not
run against the *cestui* trust applies only to express trusts, and that im-
plied or constructive trusts are barred by the statute of limitations. 25
Cyc., 1155; *Falls v. Torrence,* 11 N. C., 413; *Edwards v. University,* 21
N. C., 325; *Wheeler v. Piper,* 56 N. C., 250; *Faggart v. Bost,* 122 N. C.,
517; *Coxe v. Carson,* 169 N. C., 132.

A trust to convey, which is alleged in the complaint, with no other
active duties to perform, is deemed an active trust. 3 Pomeroy Eq.,
sec. 992. The plaintiffs could have called for a conveyance in accord-
ance therewith at any time after the death of D. L. Pritchard, now
thirty-two years ago, and the statute began to run from the time the
right accrued to call upon the court to declare the holder of the legal
title a trustee. *Greenleaf v. Land Co.,* 146 N. C., 508; 39 Cyc., 509.

If this were a passive or naked trust (*Wilder v. Ireland,* 53 N. C., 85),
by virtue of the statute of uses (Revisal, 1584), the plaintiffs could have
called for the legal title to be conveyed to them in accordance with the
terms of the trust at any time; and if so the cause of action accrued
thirty-two years ago.

The plaintiffs, on their contention, were vested remaindermen in one-
third and contingent remaindermen in the other two-thirds of this land
and had a right of action to have a court declare the trusts to protect
their remainder from sale to some purchaser for value without notice,
and having failed for thirty-two years to assert it, they are now barred.
*Greenleaf v. Land Co.,* 146 N. C., 508; *In re Bateman's Will,* 168 N. C.,
234; *Cedar Works v. Lumber Co., ib.,* 394; *Lynch v. Johnson,* 171 N. C.,
615; 39 Cyc., 522, 523, 534.

The plaintiffs could certainly have instituted a proceeding to have this trust declared on the death of D. L. Pritchard thirty-two years ago, or upon the deed conveying the property to Hughes' wife in 1894, or upon the conveyance in fee to the defendant in 1911, and certainly upon the death of the grantee, Hughes, fifteen years ago. *Greenleaf v. Land Co.,* 146 N. C., 508; *Jackson v. Farmer,* 151 N. C., 279.

If one of the plaintiffs is barred, all are, since the declaration of the trust in one action would inure to the benefit of all, for they are all in the same class. *Yarborough v. Moore,* 151 N. C., 121; *Matthews v. Joyce,* 85 N. C., 264.

The evidence is complete and overwhelming and *practically uncontradicted* that the defendant and those under whom he claims were *purchasers for value.* The finding that the defendant and those under whom he claims were *not* "purchasers for value *and* without notice," taken in connection with all the evidence, means simply that they were "purchasers, but with notice." The issue, in the best light for the plaintiffs, is insufficient and ambiguous.

The trust attempted to be proven that at the time D. L. Pritchard conveyed the land to Hughes the latter agreed verbally that "after the death of D. L. Pritchard that he would execute a deed in fee simple conveying said land to his wife for life, with the remainder to himself for life if he survived her, then with remainder over on certain contingencies," is not a trust at all, but a mere "contract to convey" which, not being in writing, is void under the statute of frauds, and is moreover barred by the Connor Act as to the defendant and those under whom he claims under a chain of registered deeds.

The integrity of titles is of the greatest importance to the landowners of the State and to those who wish to buy land, and this defendant should not be dispossessed upon the allegations of this complaint and the proof of a secret and latent lien after the lapse of thirty years and after having placed $5,000 improvements on the property. It is not found that the defendant was not a purchaser for value, and if the finding can be construed that he was a purchaser with notice, still the defendant is protected both by the Connor Act and the statute of frauds.